UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No.: 8:14-cv-993-EAK-JSS

LAWRENCE N. WILKINS, CAROL G. WILKINS, THE WILKINS FOUNDATION, INC., and LIVING LIGHT MINISTIRES, INC.,

    Defendants.

## ORDER

This cause is before the Court upon the parties' competing proposed forms of final judgment and supporting legal memoranda (Docs. 202, 203).

### I. Introduction and Conclusion

The issue before the Court is the entry of an appropriate final judgment consistent with the jury's special verdict in this civil case. As detailed herein, the Court agrees with the position taken by the United States.

### II. Background

On February 18, 2016, pursuant to 26 U.S.C. §§ 7401 and 7403, the United States filed its twice-amended, operative complaint seeking to reduce to judgment an amount of unpaid income tax allegedly owed by Defendant Lawrence Wilkins (Count I) and to foreclose federal tax liens on real property belonging to Wilkins but titled in the name of Defendant Living Light Ministries, Inc. (Counts II & III). *See generally* (Doc. 76). Count I proceeded to jury trial on July 9, 2018. At trial, the United States asked the jury to find in its favor and hold Wilkins liable for over $7 million of unpaid taxes, penalties, and interest that the Internal Revenue Service ("IRS") assessed against Wilkins for tax years 1996

through 2005. Evidence and argument closed on the afternoon of July 17, 2018. The Court thereafter instructed the jury on the law, provided the jury with a special verdict form, and sent the jury out to deliberate. The jury returned its verdict that evening and found the following:

> (1) The IRS properly issued Wilkins two statutory notices of deficiency for the years 1996–2002 and 2003–2005, respectively.
>
> (2) The IRS's income tax assessments for tax years 1996–2005 were valid.
>
> (3) Certain portions of the IRS's income tax assessments for tax years 1996–2005 were unfair or inaccurate.
>
> (4) Wilkins' failure to file tax returns for tax years 1996–2005 was not due to reasonable cause.
>
> (5) Wilkins' failure to file tax returns for tax years 1996–2005 was due to fraudulent intent.

*See generally* (Doc. 195).

The following day, on July 18, 2018, the Court ordered the parties to file a stipulated form of final judgment consistent with the jury's verdict within seven days. *See* (Doc. 197). On July 24, 2018, the parties jointly moved for permission to file competing proposed forms of final judgment, as they could not agree as to form. *See* (Doc. 200). The Court granted the motion, and the parties' filed their competing proposed forms of final judgement, along with briefing substantiating their respective positions, on July 30, 2018. *See* (Docs. 202, 2013). Pursuant to the jury's verdict, the United States requests that the Court enter final judgment in its favor in the total amount of $840,774.08 for tax years 1996–2004, and judgment in favor of Wilkins in the amount of $0.00 for tax year

2

2005. *See generally* (Doc. 202). Wilkins requests that the Court enter judgment in his favor in the amount of $0.00 for all tax years.

### III. Discussion

Pursuant to 26 U.S.C. §§ 6201 *et seq.*, the IRS, following certain protocol, has the authority to make assessments of all unpaid income taxes. An assessment by the IRS is "essentially a bookkeeping notation" that "is made when the Secretary of the Treasury or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States*, 423 U.S. 161, 171 n.13 (1976) (citing 26 U.S.C. § 6203). The assessment "amounts to an IRS determination that a taxpayer owes the [f]ederal [g]overnment a certain amount of unpaid taxes[.]" *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) (internal quotations and citations omitted).

As the Court duly instructed the jury, in reducing an income tax assessment to judgment, the United States has the initial burden of proving, by a preponderance of the evidence, that the IRS's income tax assessment was properly made. *See United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006) (citing *Palmer v. United States*, 116 F.3d 1309, 1312 (9th Cir. 1997)). Here, the jury found that the United States met its burden for each tax year at issue, *see* (Doc. 195, at questions 2.A–12.A), thus entitling the IRS's income tax assessments to a presumption of correctness.

Once the United States meets it burden, the burden then shifts to the taxpayer to show that the IRS's income tax assessment was unfair or inaccurate. *Id.*; *see also United States v. Stonehill*, 702 F.2d 1288, 1294 (9th Cir. 1983); *Good v. C.I.R.*, 104 T.C.M. (CCH) 595 (T.C. 2012). "Where an assessment is based on more than one item, the presumption of correctness attaches to each item. Proof that an item is in error destroys

3

Case No.: 8:14-cv-993-EAK-JSS

the presumption for that single item; the remaining items retain their presumption of correctness." *Stonehill*, 702 F.2d at 1294. (citations omitted). Alternatively, a taxpayer can meet his burden by establishing that the audit underlying the income tax assessment exhibited a "pattern of arbitrariness or carelessness" which "destroy[s] the presumption for the *entire assessment*." *Id.* (citations omitted) (alterations and emphasis added). Here, the jury found that Wilkins met his burden for each tax year at issue. *See* (Doc. 195, at questions 2.B–12.B). In doing so, it found that Wilkins had established that certain portions of the IRS's income tax assessments were unfair or inaccurate, and it listed, for each tax year, the total amount of income that it found Wilkins had established was *not* taxable. *Id.* at questions 2.C–12.C. The jury did not find, for any tax year, that Wilkins had established that the IRS's audits underlying the assessments exhibited a pattern of arbitrariness or carelessness. *Id.* Thus, the IRS's income tax assessments remain otherwise valid.

The table below illustrates the jury's findings:

| Tax Year | Amount of Non-Taxable Income as Found by Jury |
|:---:|:---:|
| 1996 | $310,769 |
| 1997 | $933,161 |
| 1998 | $1,073,179 |
| 1999 | $253,585 |
| 2000 | $193,314 |
| 2001 | $141,465 |
| 2002 | $88,355 |

Case No.: 8:14-cv-993-EAK-JSS

| | |
|---|---|
| 2003 | $110,823 |
| 2004 | $229,716 |
| 2005 | $793,746 |

*Id.* These findings by the jury are at the heart of the parties' current dispute.

The proposed form of final judgment submitted by the United States (Doc. 202-1) reflects both the jury's findings as well as additional tax calculations performed by IRS Agent Marjorie Kerkado. *See* (Doc. 202, at 4). Agent Kerkado first calculated the amount of taxable income attributable to Wilkins by subtracting from the IRS's initial determination of Wilkins' income, as reflected in its income tax assessments and statutory Notices of Deficiency,[1] those amounts that the jury found were improperly attributed to Wilkins as income. *Id.*; (Doc. 202-1). The table below illustrates Agent Karkado's calculations in that regard:

| Tax Year | Income Reflected in IRS Income Tax Assessments/Notices of Deficiency | Amount of Non-Taxable Income as Found by Jury | Resulting Taxable Income After Verdict |
|---|---|---|---|
| 1996 | $388,459 | $310,769 | $77,690 |
| 1997 | $1,036,846 | $933,161 | $103,865 |
| 1998 | $1,192,421 | $1,073,179 | $119,242 |
| 1999 | $316,981 | $253,585 | $63,396 |
| 2000 | $241,642 | $193,314 | $48,328 |
| 2001 | $176,708 | $141,465 | $35,243 |

---

[1] These amounts were summarized in Unites States' Exhibits 2, 16, and 18. *See* (Docs. 196-3, 196-14, 196-16).

5

| 2002 | $110,444 | $88,355  | $22,089  |
| 2003 | $221,646 | $110,823 | $110,823 |
| 2004 | $338,425 | $229,716 | $108,709 |

*See* (Doc. 202-1). Agent Kerkado, applying relevant provisions of the Internal Revenue Code, then calculated the amount of tax, penalty, and interest for each tax year to arrive at what the United States contends is Wilkins' total tax liability for tax years 1996–2004: $840,774.08 (as of July 25, 2018). *See* (Doc. 202, at 4); *id.*

Notably, Agent Kerkado's calculations do not include tax year 2005. This is because the amount of taxable income the jury found was improperly attributed to Wilkins in that year exceeds the amount of taxable income the IRS actually attributed to Wilkins in its audit. While the IRS only attributed $597,132 in income to Wilkins in tax year 2005, *see id.*, the jury found that Wilkins had established that $793,746 was improperly attributed to him as income by the IRS, *see* (Doc. 195, at question 12.C). For purposes of submitting its proposed form of final judgment, the United States treated this discrepancy as if the jury found that Wilkins had established that all $597,132 was improperly attributed to him as income by the IRS, or, in other words, that his taxable income for tax year 2005 is $0.00. Nevertheless, the United States believes that the jury's finding was in error, *see* (Doc. 202, at 4), and it has indicated that intends to move to have the Court correct this error post-trial, *see* (Doc. 200, at 2 n.1). As explained further below, that will not be necessary. The Court takes this opportunity to correct that error now.

When a district court utilizes a special verdict at trial, it can properly take the initiative to reconcile any inconsistencies in the jury's findings. *See Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015); *Flores v. City of Westminster*, 873 F.3d

739, 756 (9th Cir. 2017), *cert. denied sub nom. Hall v. Flores*, 138 S. Ct. 1551 (2018). "Courts have a duty under the Seventh Amendment to harmonize a jury's special verdict answers, 'if such be possible under a fair reading of them. A court is also obligated to try to reconcile the jury's findings by exegesis, if necessary.'" *Flores*, 873 F.3d at 756 (quoting *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991)). In attempting to reconcile the jury's apparently inconsistent answers, the district court must "view the case in any reasonable way that makes the verdict consistent," *id.* (alterations omitted), and "should, in determining whether those answers represent a logical and probable decision on the issues as submitted, refer to the entire case—pleadings, evidence, argument, jury instructions—and not just to the jury's answers themselves," *Royal Cup, Inc. v. Jenkins Coffee Serv., Inc.*, 898 F.2d 1514, 1521 (11th Cir. 1990) (citing *Griffin v. Matherne*, 471 F.2d 911, 916 (5th Cir. 1973); *Wright v. Kroeger Corp.,* 422 F.2d 176, 178 (5th Cir. 1970)). A district court "must make all reasonable efforts to reconcile an inconsistent jury verdict and if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Reider*, 793 F.3d at 1259 (citing *Burger King Corp. v. Mason,* 710 F.2d 1480, 1489 (11th Cir. 1983).

Here, after deliberating for approximately two hours, the jury sent a note to the Court indicating that it had reached a verdict. *See* (Doc. 199-2). When called upon by the Court to publish its verdict, however, the jury requested an additional five minutes to correct mistakes it had made on the special verdict form. *See* (Doc. 199-3). Analysis of the special verdict form, which includes scratched-out amounts sitting side-by-side the final amounts of income that the jury found Wilkins had established were not taxable, reveals that the jury initially misunderstood its directives. For each tax year except 2003

(where only one amount was entered), the jury entered an initial amount, scratched it out, and then replaced it with a final amount. This is significant because, when added together, the scratched-out amounts and the final amounts equal the total taxable income the IRS attributed to Wilkins for each of the tax years. Thus, simple math and modest deductive logic reveal the jury's mistake: the jury initially entered the amount of *taxable income* it found *was* attributable to Wilkins for each of the tax years and, upon realizing its mistake, scratched that amount out and replaced it with the amount it found Wilkins had established was *not* taxable. This correction was easily made by simply subtracting the amount of taxable income it found was attributable to Wilkins from the taxable income the IRS attributed to Wilkins for each tax year. This also explains why the jury did not scratch out the amount it initially entered for tax year 2003. For that year, the amount of taxable income the jury found was attributable to Wilkins ($110,823) was exactly half the total amount of income the IRS originally attributed to Wilkins in its assessment ($221,646). That being the case, there was no scrivener's error for the jury to correct.[2]

So, how does that analysis aid the Court in remedying the error the United States contends the jury committed for tax year 2005 and ultimately harmonizing the jury's verdict? For that year, the jury initially entered "$363,457." *See* (Doc. 195, at question 12.C). As explained above, this would appear to be the amount of taxable income the jury found *was* properly attributable to Wilkins. Upon realizing that this was not what the special verdict asked it to determine, the jury crossed out that amount and replaced it with "$793,746." *Id.* However, given a fair reading of the remainder of the jury's verdict, and

---

[2] The Court takes this opportunity to note that it need not—and, indeed, will not—venture to guess at or speculate as to *how* the jury went about determining the specific amounts of income it ultimately found the IRS improperly attributed to Wilkins for each tax year.

applying the same mechanics the jury utilized to correct mistakes it made for the other tax years, the Court finds that the amount the jury should have entered is **$233,675** (*i.e.*, $597,132—the total taxable income the IRS attributed to Wilkins for that year—less $363,457—the amount of taxable income the jury found *was* properly attributable to Wilkins—equals the amount of taxable income the jury found was *not* taxable, or $233,675).

And this begs yet another question: how did the jury come up with "$793,746?" The United States contends that, utilizing United States' Exhibit 18 (Doc. 196-16), and in its "haste" to correct its error and return its verdict, the jury simply subtracted the amount of taxable income it found was properly attributable to Wilkins ($363,457) from the wrong number. The Court agrees, and has included below for clarity purposes the relevant portion of United States' Exhibit 18:

| Description/Type | 2003 | 2004 | 2005 | Totals |
|---|---|---|---|---|
| Cash Out + Cash to/for Family Member | $ 121,086.96 | $ 76,178.92 | $ 72,260.75 | $ 269,526.63 |
| Real Estate Property | | 121,068.44 | 309,221.14 | 430,289.58 |
| Department & Specialty Stores/Services | 22,963.69 | 23,218.08 | 46,878.58 | 93,060.35 |
| Loan Payments | 16,173.15 | | | 16,173.15 |
| Taxes and Fees | 13,845.91 | 3,526.69 | 10,161.94 | 27,534.54 |
| Utilities/Phone Service/Internet/Rent | 11,936.45 | 9,193.15 | 10,715.90 | 31,845.50 |
| Medical Services and Pharmacy | 9,742.89 | 5,926.09 | 4,610.97 | 20,279.95 |
| Food and Liquor Store | 6,105.13 | 11,371.05 | 13,838.21 | 31,314.39 |
| Vehicle Expense | 5,518.51 | 27,543.43 | 68,461.98 | 101,523.92 |
| Animal Related | 3,462.95 | 38,872.07 | 15,185.94 | 57,520.96 |
| Miscellaneous and/or Unidentified | 3,237.63 | 4,882.48 | 6,286.23 | 14,406.34 |
| Legal Fees | 3,000.00 | 12,556.40 | 21,184.51 | 36,740.91 |
| Restaurants/Gas/Entertainment | 2,688.26 | 4,087.73 | 11,826.18 | 18,699.95 |
| Donation | 1,885.00 | | 6,500.00 | 8,385.00 |
| **Totals** | **$ 221,646.53** | **$ 338,424.53** | **$ 597,132.33** | **$ 1,157,203** |

Upon review, it appears that instead of subtracting the amount of taxable income it found was properly attributable to Wilkins for tax year 2005 ($363,457) from the amount

9

of taxable income the IRS attributed to Wilkins for that same year ($597,123), the jury appears to have mistakenly subtracted that amount from the total amount of taxable income the IRS attributed to Wilkins for tax years *2003–2005* ($1,157,203). Indeed, $1,157,203 less $363,457 equals $793,746—or, the amount the jury erroneously entered on the special verdict form. Given the benefit of hindsight, the Court finds the jury's minor misstep to be a reasonable one. To be sure, the total amount of taxable income the IRS attributed to Wilkins for tax years 2003–2005 (*i.e.*, the number the jury mistakenly utilized in its calculation) sits in the column directly to the right of the column housing the amount of taxable income the IRS attributed to Wilkins solely for tax year 2005 (*i.e.*, the amount the jury *should have* utilized). Thus, it's not unreasonable to think the jury simply misidentified the appropriate total amount while making quick, last-minute adjustments to its verdict due to the proximity of the amounts' locations within the chart.

The critical question then becomes, how does the Court appropriately determine Wilkins' total tax liability (*i.e.*, tax, penalties, and interest) and enter final judgment? Wilkins contends that it cannot. *See generally* (Doc. 203). According to Wilkins, a jury in a civil case "must find all facts necessary to a money judgment verdict." *Id.* at 2. And because the jury was only tasked with determining the amount of taxable income the IRS had improperly attributed to him—and not his *total tax liability for all tax years*—Wilkins argues the only reasonable reading of the jury's special verdict is a judgment in his favor against the United States for $0.00. The Court finds Wilkins' position, frankly, incredible. The Court's instructions and verdict form went through multiple rounds of briefing, with ample opportunity for comment and objection. Yet, *not once* did Wilkins request that the jury be tasked with determining his total tax liability. And, more importantly, Wilkins had

*not one* objection to the Court's final proposed jury instructions or special verdict form. *See* (Docs. 184–186). Thus, as the question of Wilkins' total tax liability was not submitted to the jury, Rule 49(a), which deals with special verdicts, permits the Court to make such a finding in rendering its judgment. To be sure, Rule 49(a) states in relevant part:

> A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue.

See Fed. R. Civ. P. 49(a)(3). The jury's categorical answers to the amount of non-taxable income for each tax year at issue show, by simple math, the amount of taxable income Wilkins realized. Based on those findings, and with the assistance of the United States, the Court can now determine the total amount of tax Wilkins owes for tax years 1996–2005 and enter final judgment against him pursuant Rule 58. *See Gen. Ins. Co. of Am. v. Fleeger*, 389 F.2d 159, 161 (5th Cir. 1968) ("Under Rule 49(a) the trial judge has the responsibility of applying appropriate legal principles to the facts found by the jury.");[3] *see also Harding v. Evans*, 207 F. Supp. 852, 855 (M.D. Pa. 1962) ("The legal effect of the jury's answers to special interrogatories propounded under Rule 49(a) is for the court."); *Ratigan v. New York Cent R Co.*, 181 F. Supp. 228, 232 (N.D.N.Y. 1960), *aff'd sub nom. Ratigan v. New York Cent. R. Co.*, 291 F.2d 548 (2d Cir. 1961) ("The Judge has the responsibility to apply appropriate legal principles to facts found by the jury. It is settled that only questions of fact are to be put to the jury by the interrogatories, and the legal proposition is to be deduced from the answers by the Court.") (citations omitted).

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## IV. Conclusion

Accordingly, it is

**ORDERED** that the United States shall submit an amended proposed form of final judgment for the Court's review on or before August 6, 2018. In doing so, it shall, in line with the Internal Revenue Code, and not inconsistent with the jury's verdict or this order, calculate Wilkins' total tax liability (*i.e.*, tax, penalty, and interest) for the tax years 1996–2005. For tax year 2005, the Court modifies the jury's answer to question 12.C, and the United States shall read the jury's verdict as if it entered $233,675 on the line provided. The United States' amended proposed form of final judgement shall be accompanied by declaration or affidavit of the IRS Agent who calculated Wilkins' total tax liability, which shall set forth the factual assumptions made in calculating the same.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 2nd day of August, 2018.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record