## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                    Case No.: 8:14-cv-993-EAK-JSS

LAWRENCE N. WILKINS, CAROL G.
WILKINS,         THE         WILKINS
FOUNDATION, INC., and LIVING
LIGHT MINISTRIES, INC.,

      Defendants.

_____

### ORDER

**THIS CAUSE** is before the Court on Defendants Lawrence N. Wilkins', Carol

G. Wilkins', the Wilkins Foundation, Inc.'s, and Living Light Ministry, Inc.'s

(collectively, "**Defendants**") Motion to Alter or Amend the Judgment on Count I, or

Alternatively for a New Trial ("**Motion**") (Doc. 217) and Plaintiff United States'

response in opposition to the same (Doc. 219). The Motion is **DENIED**.

## I.    Background

Lawrence Wilkins has not filed a federal income tax return since at least 1994.

(Doc. 211 at 13:17–20). Consequently, on February 27, 2001, the Internal Revenue

service ("**IRS**") began what would become a multi-year investigation into Wilkins'

alleged federal income tax liabilities. (Doc. 207 at 167:9–168:9). At the conclusion of

its investigation, the IRS determined that Wilkins was liable for millions of dollars in

unpaid federal income taxes, penalties, and interest for tax years 1996 to 2005 and

Case No.: 8:14-cv-993-EAK-JSS

issued to Wilkins statutory notices of deficiency pursuant to 26 U.S.C. § 6212. (Docs. 196-1–2, 196-13). Wilkins did not petition the United States Tax Court to redetermine the income tax deficiencies calculated by the IRS or otherwise respond to the IRS's statutory notices of deficiency. (Doc. 209 at 12:9–11, 38:18–21, 146:11–15). Accordingly, pursuant to 26 U.S.C. §§ 6201 et seq., a delegate of the Secretary of Treasury thereafter assessed against Wilkins over $7 million in unpaid federal income taxes, penalties, and interest for tax years 1996 to 2005. (Docs. 196-137–146).

Wilkins refused to pay, however, and, on April 25, 2014, the United States filed a civil complaint against Wilkins and the other defendants, seeking, inter alia, to reduce to judgment Wilkins' unpaid federal income tax liabilities. (Doc. 1). The United States filed its operative, Second Amended Complaint on February 18, 2016. (Doc. 76). The case was tried to a jury beginning on July 9, 2018. (Doc. 168). On July 17, 2018, the jury returned a special verdict, finding that Wilkins had fraudulently failed to pay federal income taxes on hundreds of thousands of dollars of otherwise taxable income over the course of a decade. (Doc. 195).

The following day, on July 18, 2018, the Court ordered the parties to file within seven days a stipulated form of final judgment consistent with the jury's special verdict. (Doc. 197). The parties could not agree as to the form of the final judgment, however, and jointly moved for permission to file competing proposed forms of final judgment. (Doc. 200). The Court granted the motion, (Doc. 201), and the parties filed their competing proposed forms of final judgment, along with briefing substantiating their respective positions, on July 30, 2018, (Docs. 202, 203).

Case No.:  8:14-cv-993-EAK-JSS

Pursuant to the jury's special verdict, the United States requested the Court enter final judgment in the United States' favor in the total amount of $840,774.08, which sum represented amounts for unpaid taxes, penalties, and interest for tax years 1996 to 2004.   (Doc. 202).   Due to an apparent miscalculation in the jury's computation of Wilkins' non-taxable income for tax year 2005, the United States requested the Court enter judgment in Wilkins' favor in the amount of $0.00 for tax year 2005.  Id.  However, the United States indicated that, after the entry of judgment, the United States intended to move for appropriate relief to correct the jury's error.  Id. For their part, Defendants requested the Court enter judgement in Wilkins' favor in the amount of $0.00 for *all* tax years.  (Doc. 203).

Upon review of the parties' competing proposed forms of final judgment, the parties' briefing, and the jury's special verdict, the Court found that the jury had indeed miscalculated the amount of Wilkins' non-taxable income for tax year 2005.  (Doc. 204).  Thus, the Court, as it is permitted to do, reconciled the inconsistent answers given in the jury's special verdict.  Id.  In doing so, the Court determined the correct amount of Wilkins' non-taxable income for tax year 2005 based on a fair reading of the remainder of the jury's special verdict and applying the same mechanics the jury utilized to correct other mistakes it had made in calculating Wilkins' non-taxable income for tax years 1996 to 2004.[1]  Id.

---

[1] The Court's procedures in this respect are set out in further detail, infra.

All that remained, then, was the determination of Wilkins' total tax liability. Wilkins argued this was an impossible task because it is within the "sole province" of the jury to find "all facts necessary to a money judgment verdict" in a civil case. (Doc. 203 at 2–6). And because the jury was tasked only with determining the amount of Wilkins' non-taxable income for tax years 1996 to 2005 – *not his total tax liability* (*i.e.*, unpaid taxes, penalties, and interest) – Wilkins argued "[t]he fairest and most reasonable reading of the jury's verdict . . . is a judgment against the United States and in favor of [Wilkins] for $0.00." Id. at 6.

The Court rejected Wilkins' position. (Doc. 204).  The Court found that, since no party had requested the Court submit to the jury the issue of Wilkins' total tax liability, Rule 49 of the Federal Rules of Civil Procedure permitted the Court to determine Wilkins' total tax liability using the facts duly found by the jury in its special verdict. Id. at 11.  To do that, the Court ordered the United States to submit an amended proposed form of final judgment, along with a declaration or affidavit of the IRS Agent who calculated Wilkins' resulting total tax liability, by August 6, 2018. Id. at 12.

On August 6, 2018, the United States submitted its amended proposed form of final judgment, along with the declaration of IRS Agent Marjorie Kerkado. (Doc. 205).  Using the jury's findings and the IRS's Report Generation Software ("**RGS**"),[2]

---

[2] RGS is a software system used by IRS revenue agents in conducting examinations of taxpayers' tax liability.

Agent Kerkado calculated Wilkins' total tax liability at $975,525.48.  (Doc. 205-1 at ¶9).  To arrive at that sum, Agent Kerkado first calculated Wilkins' total taxable income for each tax year by subtracting the amounts of income the jury found the IRS improperly attributed to Wilkins for each tax year from the amounts of income the IRS originally attributed to Wilkins for each tax year, as reflected in the IRS's statutory notices of deficiency.[3]  Id. at ¶3.  Agent Kerkado then utilized the RGS to compute the amount of unpaid income tax for tax years 1996 to 2005.  Id. at ¶5.  The RGS automatically computes the amount of income tax owed based on the statutory rates in effect during each given tax year.  Id.  Next, Agent Kerkado utilized the RGS to compute the penalties owed by Wilkins.  Id. at ¶6.  The amounts of the penalties are set by statute, and the RGS computes the penalties automatically.  Id.  Finally, Agent Kerkado utilized the RGS to compute the total interest owed.  Id. at ¶8.  Interest at the applicable quarterly rate is compounded daily in accordance with the Internal Revenue Code and is calculated automatically by the RGS.  Id.  After giving Wilkins credit for a payment made to the IRS (though levy) in 2008, Wilkins' total tax liability came to $975,525.48.  Id. at ¶¶7, 9.  Notably, in calculating Wilkins' total tax liability, Agent Kerkado treated Wilkins' income in the same manner as the agents who had previously conducted the original tax liability examinations, on which the IRS's

---

[3]  Copies of the IRS's statutory notices of deficiency were admitted at trial as United States' Exhibit 1A (tax years 1996 to 2002), (Doc. 196-1), 1B (tax years 1996 to 2002), (Doc. 196-2), and 15 (tax years 2003 to 2005), (Doc. 196-13).

statutory notices of deficiency, and thus the resulting income tax assessments, were based. Id. at ¶4.

On August 7, 2018, the Court entered final judgment in favor of the United States and against Wilkins in the total amount of $975,525.48, with interest thereafter in accordance with 26 U.S.C. §§ 6601, 6621, and 6622 and 28 U.S.C. § 1961(c), until paid. (Doc. 206).  Defendants' Motion followed on September 4, 2018.  (Doc. 217).

## II.   **Legal Standard**

Rule 59 of the Federal Rules of Civil procedure permits the filing of a motion to alter or amend a judgment after its entry. See Fed. R. Civ. P. 59(e). "The only grounds for granting a [Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam) (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999)).

Alternatively, Rule 59 permits the losing party to move for a new trial "on the grounds that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)).  See also Fed. R. Civ. P. 59(a).

The decision to alter or amend the judgment or, alternatively, to grant a new trial is committed to the sound discretion of the district judge. American Home Assur.

Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1238–39 (11th Cir. 1985); Burger

King Corp. v. Mason, 710 F.2d 1480, 1486 (11th Cir. 1983).

## III.   **Discussion**

Defendants contend that the procedures the Court utilized in rendering final

judgment against Wilkins were constitutionally flawed and manifestly unjust for

several reasons, requiring either amendment of the final judgment in Wilkins' favor

or, alternatively, a new trial.  Specifically, Defendants argue that:  (1) Agent Kerkado's

declaration constitutes expert testimony, and that the Court, by considering her expert

testimony post-trial, violated Wilkins' Fifth and Seventh Amendment rights; (2) the

Court's procedures in rendering final judgment against Wilkins ran afoul of the burden

of proof in civil tax evasion cases, and the United States failed to meet its burden to

prove Wilkins' total tax liability; (3) the Court's reconciliation of the jury's verdict for

tax year 2005 violated Wilkins' Seventh Amendment rights; and (4) Agent Kerkado's

calculations of Wilkins' total tax liability are fraught with error.  (Doc. 217).  The

Court disagrees.

First, in determining Wilkins' total tax liability based on the jury's factual

findings (*i.e.*, its answers to the interrogatories posed by the special verdict), the Court

properly determined the legal effect of those factual findings, and the Court's reliance

on Agent Kerkado's declaration in rendering final judgment against Wilkins did not

violate Wilkins' Fifth Amendment due process rights.  The Court also did not violate

Wilkins' Seventh Amendment right to a jury trial, as the key factual issues were

submitted to the jury.  To the extent they weren't, Wilkins waived his right to a jury

determination of his total tax liability by failing to request that the issue be submitted to the jury.   Second, the Court's procedures in rendering final judgment against Wilkins were in complete accord with the burden shifting framework applicable in cases where the United States seeks to reduce an IRS income tax assessment to judgment.   Third, the Court properly exercised its discretion to reconcile the answers given in the jury's special verdict with respect to tax year 2005, giving full effect to Wilkins' right to a jury trial.   Finally, the single alleged error in Agent Kerkado's calculation of Wilkins' total tax liability is, upon closer review, not an error at all. Defendants simply misrepresent the relevant portions of the Internal Revenue Code related to penalties for a taxpayer's failure to pay estimated tax payments.

### A. The Court's Procedures in Rendering Final Judgment Against Wilkins Did Not Run Afoul of Wilkins' Fifth or Seventh Amendment Rights.

Defendants argue that Agent Kerkado's declaration constitutes previously undisclosed expert testimony that was improperly utilized by the Court post-trial to settle a disputed factual issue.   (Doc. 217 at 3–11).   Specifically, according to Wilkins, "the problem here" is that "the Court considered post-trial expert testimony to help determine a fact in issue, namely, the amount of tax due."   Id. at 5.   Wilkins argues that by "allowing the expert witness opinion evidence *after* the jury returned its verdict and was discharged," the Court violated Wilkins' Fifth Amendment due process rights because "he was denied the opportunity to cross-examine [Agent] Kerkado and her expert tax opinions and to present his own tax expert to the trier of fact."   Id. at 2, 7 (emphasis in original).   Relatedly, Defendants further argue that Agent Kerkado's

declaration "constitutes new evidence that was not presented to the jury, and hence the [final judgment] violated Wilkins' Seventh Amendment rights to a trial by jury" because "[t]he jury in a federal civil case . . . must be presented with all facts necessary to a money judgment verdict." Id. at 7.  Defendants are wrong.  In determining Wilkins' total tax liability based on the jury's answers to the interrogatories posed in the special verdict, the Court properly determined the legal effect of the jury's factual findings.

"Under Rule 49(a) the trial judge has the responsibility of applying appropriate legal principles to the facts found by the jury." Gen. Ins. Co. of Am. v. Fleeger, 389 F.2d 159, 161 (5th Cir. 1968).[4] See also Harding v. Evans, 207 F.Supp. 852, 855 (M.D. Pa. Jul. 31, 1962) (Sheridan, J.) ("The legal effect of the jury's answers to special interrogatories propounded under Rule 49(a) is for the court."). Indeed, "[i]t is settled that only *questions of fact* are to be put to the jury by the interrogatories, and the legal proposition is to be deduced from the answers by the Court." Ratigan v. New York Cent R. Co., 181 F Supp. 228, 232 (N.D.N.Y. Jan. 25, 1960) (Foley, J.) (emphasis added), aff'd sub nom. Ratigan v. New York Cent. R. Co., 291 F.2d 548 (2d Cir. 1961).

At trial, the Court asked the jury to return a special verdict in the form of written findings on certain issues of fact by submitting to the jury "written questions

---

[4]  In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on October 1, 1981.

Case No.:  8:14-cv-993-EAK-JSS

susceptible of a categorical or other brief answer." Fed. R. Civ. P. 49(a)(1)(A).

Specifically, the jury was tasked with determining the following:

(1)    Whether the United States properly issued to Wilkins statutory notices of deficiency for tax years 1996 to 2005;

(2)    If so, whether the IRS's income tax assessments for tax years 1996 to 2005 were valid;

(3)    If so, whether the IRS's income tax assessments were unfair or inaccurate;

(4)    If so, by what amount or, alternatively, whether Wilkins had established that some or all of the IRS's income tax assessments for tax years 1996 to 2005 exhibited a pattern of arbitrariness or carelessness such that the entire assessment for a given tax year was invalid; and

(5)    Whether Wilkins' failure to file tax returns for tax years 1996 to 2005 was due to reasonable cause or fraudulent intent.

(Doc. 195).  Upon deliberation, the jury found that:

(1)    The IRS properly issued to Wilkins two statutory notices of deficiency for the years 1996 to 2002 and 2003 to 2005, respectively;

(2)    The IRS's income tax assessments for tax years 1996 to 2005 were valid;

(3)    Certain portions of the IRS's income tax assessments for tax years 1996 to 2005 were unfair or inaccurate;

(4)    The IRS improperly attributed to Wilkins certain amounts of taxable income. However, the jury did not find, *for any tax year*, that Wilkins had established that

the IRS's audits underlying the assessments exhibited a pattern of arbitrariness or carelessness; and

(5)   Wilkins' failure to file tax returns for tax years 1996 to 2005 was due to fraudulent intent.

Id.  Thus, the jury found that Wilkins had fraudulently failed to file federal income tax returns for tax years 1996 to 2005, and that the IRS's resulting income tax assessments for those tax years were valid.  Id.  However, the jury also found that some, *but not all*, of the items the IRS included in its calculation of Wilkins' taxable income should not have been included.  Id.  The table below illustrates the jury's findings in that respect:

| Tax Year | Amount of Non-Taxable Income as Found by Jury |
|---|---|
| 1996 | $310,769 |
| 1997 | $933,161 |
| 1998 | $1,073,179 |
| 1999 | $253,585 |
| 2000 | $193,314 |
| 2001 | $141,465 |
| 2002 | $88,355 |
| 2003 | $110,823 |
| 2004 | $229,716 |
| 2005 | $233,675[5] |

---

[5] This amount reflects the Court's reconciliation of the jury's miscalculation of Wilkins' non-taxable income for tax year 2005.  Defendants take issue with the Court's reconciliation, which the Court addresses in more detail, infra.

Case No.:  8:14-cv-993-EAK-JSS

Id.

Once the jury returned its findings, it was then the Court's duty to determine the legal effect of those findings – or, in other words, Wilkins' total tax liability. Fleeger, 389 F.2d at 161.  To that end, simple math converts the jury's findings to the amount of taxable income Wilkins realized for tax years 1996 to 2005.  That is, the difference between (1) the amount of non-taxable income as found by the jury and (2) the IRS's initial determination of Wilkins' taxable income as reflected in the IRS's statutory notices of deficiency and resulting income tax assessments, which remain otherwise valid.  See United States v. Stonehill, 702 F.2d 1288, 1294 (9th Cir. 1983). Thereafter, Wilkins' total tax liability could be determined by applying certain provisions of the Internal Revenue Code to Wilkins' taxable income – specifically, 26 U.S.C. § 1 (setting forth the progressive, federal tax rates on taxable income), 26 U.S.C. § 6651 (setting forth the failure to pay and fraudulent failure to file penalties), 26 U.S.C. § 6654 (setting forth the penalty for failing to make estimated tax payments), and 26 U.S.C. §§ 6621, 6622 (setting forth the applicable interest rates on unpaid federal income tax).  Each of those amounts are matters of law, the dictates of which the Court found to be applicable in this case based on the evidence introduced at trial and the jury's factual findings, and subject to mathematical computation.  Thus, there was no need for the jury to make factual findings on the issue, and the Court appropriately determined Wilkins' total tax liability.

Because the determination of Wilkins' total tax liability was a legal function, the Court did not run afoul of Wilkins' Fifth Amendment due process rights or Seventh

Amendment right to a jury trial.  The Court does not disagree with Defendants that testimony regarding the tax treatment of a particular transaction is admissible at trial as expert testimony.  See United States v. Fogg, 652 F.2d 551, 555 (5th Cir. 1981).  Nor does the Court disagree that the United States failed to timely disclose an expert during discovery, which would have prohibited the United States from offering expert testimony at trial.  However, contrary to Defendants' contention, Agent Kerkado's declaration was not "expert testimony" that should have been presented to the jury at trial and subject to Wilkins' cross-examination or otherwise challenged by Wilkins' own expert.

Rule 702 of the Federal Rules of Evidence, which governs the admission of expert testimony at trial, states in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help *the trier of fact* to understand the evidence *or to determine a fact in issue*[.]

Fed. R. Evid. 702(a) (emphasis added).  As explained above, Wilkins' total tax liability was not a "fact in issue" for the jury to determine but rather an issue of law for the Court, and thus Agent Kerkado's declaration does not fall within the purview of the Rule.  Instead, Agent Kerkado's declaration simply outlines the process by which she computed Wilkins' total tax liability using the RGS.  Defendants cite to no legal authority – and the Court has found none through its own research – that prohibits a district court from (1) soliciting from a party a proposed form of final judgment that is

supported by the kind of information contained in Agent Kerkado's declaration and (2) relying on that information in rendering its own final judgment.[6]

Moreover, Wilkins had ample opportunity to both stipulate to his total tax liability and, when that proved fruitless, to submit his own computation of his total tax liability, but he refused to do so.  As explained above, after the jury returned its special verdict, the Court ordered the parties to file a stipulated form of final judgment consistent with the jury's verdict.  (Doc. 197).  When the parties failed to agree, the Court gave Wilkins the opportunity to prepare his own, separate proposed form of final judgment, with which Wilkins would have been free to file his own supporting materials for the Court's consideration.  (Doc. 201).  But Wilkins essentially declined that opportunity and took the incredible position that he owes *nothing*.  (Doc. 203).  In sum, the Court finds that the procedures it utilized to determine Wilkins' total tax liability and enter final judgment did not violate Wilkins' Fifth Amendment due process rights.

Nor did the Court's procedures violate Wilkins' Seventh Amendment right to a jury trial.  The Court does not disagree with Defendants that when the United States sues a defendant to reduce an alleged tax liability to judgment, the defendant is guaranteed a jury trial.  However, Defendants' contention that Wilkins' total tax liability is an "issue[] of fact that the jury must determine," (Doc. 217 at 8), is incorrect. As explained above, that issue is a legal determination for the Court.  The cases cited

---

[6] Indeed, as detailed further, <u>infra</u>, this practice appears to be fully entrenched in precedent.

by Defendants in support of their contrary position are inapposite, as they relate generally to the nature of civil actions to reduce tax liabilities to judgement and *do not* address the parameters of Rule 49 and the distinction between the jury's role as factfinder and the Court's responsibility to apply appropriate legal principles to the facts duly found by the jury. See, e.g., United States v. Chamberlin, 219 U.S. 250, 258 (1911) (discussing whether the United States could bring action at law to recover unpaid tax liabilities); Damsky v. Zavatt, F.2d 46, 48–51 (2d Cir. 1961) (discussing historical background of tax cases to determine if suit by the United States for unpaid tax liabilities was "suit at law" to which the right to jury trial attached); United States v. Tilden, 28 F.Cas. 161, 165–66 (S.D.N.Y. March 1878) (Blatchford, J.) (holding that the United States was not limited to statutory remedy and could bring suit to enforce an assessed tax liability, which would be an action to recover a debt).

Nonetheless, even assuming for the sake of argument that Wilkins' total tax liability is a factual issue, Wilkins waived his right to a jury trial on that issue. To be sure, the Court need look no further than Rule 49, which states:

> *Issues Not Submitted.* A party *waives* the right to a jury trial on any issue of fact raised by the pleadings or evidence *but not submitted to the jury* unless, before the jury retires, the party demands its submission to the jury. *If the party does not demand submission, the court may make a finding on the issue.* If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

Fed. R. Civ. P. 49(a)(3) (emphasis added). Here, Wilkins' proposed verdict form did not ask the jury to determine his total tax liability. (Doc. 159). And *not once* before the jury was discharged did Wilkins otherwise request that the issue of his total tax

liability be submitted to the jury.  Moreover, Wilkins did not object to the Court's initial proposed verdict form on account of the absence of any special interrogatory related to the issue of his total tax liability. (Doc. 175).  Nor did Wilkins object, in any respect, to the Court's final proposed verdict form.  (Doc. 185).  Therefore, Wilkins waived his right to put to the jury the issue of his total tax liability, and the Court was permitted to make a finding on the issue.  Fed. R. Civ. P. 49(a)(3).  See also Sec'y, U.S. Dep't of Labor v. Preston, 873 F.3d 877, 886 (11th Cir. 2017), cert. denied sub nom. Preston v. Acosta, 138 S. Ct. 2680 (2018) ("[E]ven constitutional rights are subject to express waiver.  A civil litigant, of course, can waive his Seventh Amendment right to a jury trial[.]") (citing Hodges v. Easton, 106 U.S. 408, 412 (1882)) (emphasis in original).

Further, that the Court looked to Agent Kerkado's declaration in rendering final judgment is of no consequence.  The evidence needed to determine Wilkins' total taxable income and the applicability of any penalties or interest was introduced at trial, and the jury made the requisite factual findings.  Thereafter, the Court needed only to "follow[] the rules laid down in [the Internal Revenue Code]" to determine Wilkins' total tax liability.  Chamberlin, 219 U.S. at 264.  See also Demirovic v. Ortega, No. 1:15-cv-327-CLP, 2018 WL 1935981, at *5 (E.D.N.Y. Apr. 24, 2018) (Pollak, J.) (applying the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., to the jury's answers to the court's Rule 49(a) special interrogatories in order to calculate the total amount of the plaintiffs' damages).  Defendants cite to no legal authority –

and the Court has found none through its own research – that would prohibit the Court from relying on Agent Kerkado's declaration in doing so.[7]

### B. The Court's Procedures in Rendering Final Judgment Against Wilkins Were in Complete Accord with the Burden Shifting Framework Applicable in Suits to Reduce Tax Assessments to Judgment.

Defendants next argue that the United States "failed to meet its burden of proving damages" (*i.e.*, Wilkins' total tax liability) after the jury found the IRS's income tax assessments for tax years 1996 to 2005 were unfair or inaccurate.  (Doc. 217 at 11–14).  Although Defendants concede that "the presumption of correctness [of the IRS's income tax assessments] remains as to the portion[s] of the assessment[s] that survived the jury's verdict," Defendants nonetheless argue that "it is still the United States' burden to prove the *amount* of any remaining proper deficiency."  Id. at 12 (emphasis in original).  And, according to Defendants, since the United States had "the burden of proving the proper amount of the tax deficiency, its failure to present expert evidence at trial as to the proper amount of taxes due, given the jury's decision that the assessment[s] were unfair or inaccurate, requires a directed verdict in Wilkins' favor."  Id. at 14.  Defendants are wrong.  Defendants misconstrue the burden shifting rules in cases where the United States seeks to reduce an income tax assessment to judgment.  Once the jury determined that the IRS's assessments were valid, and that Wilkins only rebutted the assessments' presumption of correctness in part, the burden

---

[7]  Again, as detailed further, underline, other courts have similarly relied on submissions by the United States in rendering final judgment in civil tax evasion cases.

Case No.:  8:14-cv-993-EAK-JSS

of proving Wilkins' resulting total tax liability did not shift back to the United States. Rather, the issue became a matter of law for the Court.

An "assessment" by the IRS is "essentially a bookkeeping notation" that "is made when the Secretary of the Treasury or his delegate establishes an account against the taxpayer on the tax rolls." Laing v. United States, 423 U.S. 161, 171 n.13 (1976) (citing 26 U.S.C. § 6203).  The assessment "amounts to an IRS determination that a taxpayer owes the [f]ederal [g]overnment a certain amount of unpaid taxes[.]" United States v. Stein, 881 F.3d 853, 854 (11th Cir. 2018) (internal quotations and citations omitted).  Once a taxpayer has been assessed, the government may proceed to reduce the assessment to judgment.  26 U.S.C. § 6502(a); U.S. v. Rodgers, 461 U.S. 677, 682 (1983) ("The government may, for example, simply sue for the unpaid amount, and, on getting a judgment, exercise the usual rights of a judgment creditor.").

As the Court duly instructed the jury, in reducing an income tax assessment to judgment, the United States has the initial burden of proving, by a preponderance of the evidence, that the IRS's income tax assessment was properly made.  See United States v. White, 466 F.3d 1241, 1248 (11th Cir. 2006) (citing Palmer v. United States, 116 F.3d 1309, 1312 (9th Cir. 1997)).  "It is well established in the tax law that an assessment," properly made, "is entitled to a legal presumption of correctness—a presumption that can help the [United States] prove its case against a taxpayer in court." United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002).

Case No.:  8:14-cv-993-EAK-JSS

Here, the jury found that the United States met its burden for each tax year at issue, (Doc. 195 at 2.A–12.A), thus entitling the IRS's income tax assessments to a presumption of correctness.

Once the United States meets it burden, the burden then shifts to the taxpayer to show that the IRS's income tax assessment was unfair or inaccurate.  White, 466 F.3d at 1248; Stonehill, 702 F.2d at 1294; Good v. C.I.R., 104 T.C.M. (CCH) 595 (T.C. 2012).  "Where an assessment is based on more than one item, the presumption of correctness attaches to each item.  Proof that an item is in error destroys the presumption for that single item; *the remaining items retain their presumption of correctness.*"  Stonehill, 702 F.2d at 1294 (citations omitted) (emphasis added).  Alternatively, a taxpayer can meet his burden by establishing that the audit underlying the income tax assessment exhibited a "pattern of arbitrariness or carelessness[,]" which "destroy[s] the presumption for the entire assessment."  Id. (citations omitted).

Here, the jury found that Wilkins met his burden for each tax year at issue. (Doc. 195 at 2.B–12.B).  Specifically, the jury found that Wilkins had established that *certain portions* of the IRS's income tax assessments were unfair or inaccurate, and the jury listed, for each tax year, the total amount of income that it found Wilkins had established was *not* taxable.  Id. at 2.C–12.C.  However, the jury did *not* find, *for any tax year*, that Wilkins had established that the IRS's audits underlying the assessments exhibited a pattern of arbitrariness or carelessness.  Id.  Thus, the IRS's income tax assessments remain otherwise valid, and those portions of the assessments that the jury

19

did *not* find unfair or inaccurate retain their presumption of correctness.  Therefore,

the *Court* was thereafter in the position to calculate Wilkins' total tax liability.

The cases cited by Defendants in support of their position that, in this case, the

burden should have shifted back to the United States to prove the amount of any

remaining deficiency are inapposite.    In those cases, the taxpayer rebutted the

presumption as to the *entire* amount of the deficiency.  See Helvering v. Taylor, 293

U.S. 507, 515 (1935) (holding that the evidence was sufficient to establish that the

Commissioner's entire assessment was arbitrary and excessive and thus "upon

appropriate application that further hearing be had, [the Tax Court] should have heard

evidence to show whether a fair apportionment might be made and, if so, the correct

amount of the tax"); Keogh v. Comm'r, 713 F.2d 496, 501 (9th Cir. 1983) (holding

that "the burden of proving the deficiency reverts to the [Commissioner]" when the

taxpayer rebuts the presumption as to the entire assessment); Higginbotham v. United

States, 556 F.2d 1173, 1175 (4th Cir. 1977) (holding that where a taxpayer proves the

entire assessment is erroneous, "the Government . . . must prove how much the

taxpayer actually owes").  Those cases are thus distinguishable from this case, where

each of the IRS's assessments are based on multiple items:  deposits into Wilkins' bank

accounts for tax years 1996 to 2002 and cash expenditures made from entities Wilkins

controlled for tax years 2003 to 2005.  Since the jury found that Wilkins only rebutted

the assessments' presumption of correctness *in part*, the presumption survived as to the

remaining items included in the assessments.  Stonehill, 702 F.2d at 1294.  Moreover,

the Supreme Court's decision in <u>Helvering</u> cuts directly against Defendants' position.

In <u>Helvering</u>,[8] the Supreme Court explained:

> Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid. *Frequently, if not quite generally, evidence adequate to overthrow the Commissioner's finding is also sufficient to show the correct amount, if any, that is due.* But, where as in this case, the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that lawfully might be charged against him.

293 U.S. at 515 (emphasis added).  Here, as explained above, the jury did *not* find, for any tax year, that the IRS's assessments exhibited a pattern of arbitrariness or carelessness such that the entire assessment was invalid.  And because the evidence admitted at trial, in conjunction with the jury's answers in its special verdict, was sufficient to determine Wilkins' taxable income for all tax years, as well as the applicability of penalty and interest provisions of the Internal Revenue Code, the Court was permitted to find, without further proof from the United States, the "correct amount [of any tax] . . . that is due."  <u>Helvering</u>, 293 U.S. at 515.

Several other cases support the procedures the Court utilized in determining Wilkins' total tax liability and rendering final judgment against him.  For example, in <u>McDonald v. Comm'r</u>, the petitioners appealed the Tax Court's decision, which affirmed, with some modifications, deficiencies and additions to tax imposed by the

---

[8] As Defendants concede, that the <u>Helvering</u> Court was reviewing a decision of the Board of Tax Appeals is of no consequence since the burden shifting rules and underlying substantive considerations are the same.

Commissioner for the 1989 tax year.  114 F.3d 1194, at *1 (9th Cir. 1997).  The

Commissioner's original deficiency determination was based on the IRS's income

reconstruction.  Id.  The petitioners challenged, *inter alia*, the inclusion in the

Commissioner's calculation of the petitioners' 1989 taxable income certain checks

made payable to the petitioners.  For reasons not relevant to the Court's decision here,

the Ninth Circuit found that inclusion of the checks in the Commissioner's

calculations "constitute[d] unwarranted double taxation" and held that the petitioners'

deficiency for tax year 1989 "must be reduced by the amount of the checks."  Id. at *3.

Pursuant to Stonehill, the panel concluded that, "[a]lthough [the] error must be

corrected," the petitioners failed to show that the remainder of the Commissioner's

income reconstruction should not be accorded a presumption of correctness.  Id.

(citing Stonehill, 702 F.2d at 1294).  To effectuate the reduction, the panel remanded

the case to the Tax Court so that the *Tax Court* could recompute the petitioners' tax

liability for the 1989 tax year.  Id. at *7.  From a review of the Tax Court's docket, it

appears that, on remand, the Tax Court solicited from the Commissioner a

computation of the petitioners' total tax liability and thereafter entered amended

judgments against the petitioners.  See McDonald v. C.I.R., No. 13218-93, (T.C.

1998); Maynard v. C.I.R., No. 13220-93 (T.C. 1998).

Additionally, in United States v. Wheeler, No. 2:07-cv-6384-VBF-PLA, 2008

WL 11334496, at *1 (C.D. Cal. May 30, 2008) (Fairbank, J.), the United States

likewise sought to reduce to judgment federal income tax assessments against the

defendant for tax years 1992 to 2003.  On review of the United States' motion for

summary judgment, Judge Fairbank found that the IRS's assessments were supported by a minimal factual foundation necessary for the presumption of correctness to attach. Id. at *3.   However, the defendant countered that the IRS erroneously attributed certain items as income and improperly applied certain statutory penalties for tax years 1995 to 2003. Id. at *4–6.  Upon review, Judge Fairbank tentatively granted the United States' motion for summary judgment and ordered oral argument on the errors identified by the defendant. Id.  Notably, however, Judge Fairbank observed that, for each of the alleged errors the defendant identified in the relevant tax years, "unless an erroneous Notice of Deficiency undercuts the presumption of correctness for the entire [assessment]," such an error "would only rebut the presumption of correctness as to that item, not the whole assessment." Id. (citing Stonehill, 702 F.2d at 1294).  After holding oral argument, Judge Fairbank adopted her tentative ruling, "with certain reductions," and, as the Court did in this case, *ordered the United States to submit an amended proposed form of final judgment* for review by the court.   United States v. Wheeler, No. 2:07-cv-6384-VBF-PLA, (Doc. 52), (C.D. Cal. June 2, 2008) (Fairbank, J.).  On June 4, 2008 and June 5, 2008, respectively, the United States filed a "Revised Liability Statement" – which included certified calculations of the credits, taxes, penalties, and interest imposed by the IRS – and an amended proposed form of final judgment against the defendant, each of which gave full effect to the reductions ordered by Judge Fairbank. Id. at (Docs. 53, 55).  The United States proposed that Judge Fairbank enter judgment in its favor and against the defendant in the total

amount of $1,208,311. Id. at (Doc. 55). And on June 6, 2008, Judge Fairbank entered judgment against the defendant in that amount. Id. at (Doc. 56).

Similar rulings have been issued in bankruptcy cases. For example, In re Olshan involved the disposition of a claim by the IRS against the debtor for unpaid federal income taxes. 356 F.3d 1078, 1080 (9th Cir. 2004). After conducting an audit of the taxpayer's tax returns, the IRS determined that the debtor had (1) understated his business income and (2) overstated his business deductions and unreported nonbusiness income for the tax years 1991 and 1992. Id. In August of 1996, the IRS issued a jeopardy assessment and recorded a notice of federal tax lien against the debtor's property. Id. The following year, the debtor filed a petition for bankruptcy. Id. The IRS then filed a proof of claim to collect deficiencies remaining after the tax lien. Id. The debtor subsequently brought an adversary proceeding for a judicial determination of his tax liabilities for the 1991 and 1992 tax years. Id. The debtor alleged that the IRS's claims were overstated, that the allowed priority tax claim had been paid in full through the seizure of the debtor's assets, and that the lien was invalid. Id.

Prior to trial, the debtor and the IRS stipulated that:  (1) the liabilities for taxes, penalties, and interest set forth in the IRS's proof of claim were overstated; (2) the jeopardy assessment was overstated; (3) the debtor's claimed business expense deductions were excessive; (4) the debtor received unreported nonbusiness income in 1991 and 1992; and (5) the debtor deposited in excess of $12 million in client trust accounts controlled by him during the 1991 and 1992 tax years. Id. Prior to trial, the

bankruptcy court ruled, on the basis of the stipulation, that the debtor (through the trustee) had successfully rebutted the presumption of correctness that attached to the IRS's proof of claim, and that the IRS had the burden of proving the correctness of the claim in all respects. Id. Following the trial, the court disallowed the entire proof of claim for 1991 and 1992, to the extent it claimed a tax liability greater than that shown on the debtor's tax returns. Id. at 1082. The IRS appealed to the district court. Id.

Upon review, the district court held that the bankruptcy court "erred in not giving effect to the trustee's pretrial stipulation and trial evidence." Id. The district court reasoned that caselaw "directs the [bankruptcy] court to consider all evidence presented in determining the extent to which a claim should be allowed and does not sanction the bankruptcy court's 'all or nothing' approach.'" Id. Because, according to the district court, "the record established that [the debtor] had grossly underreported his taxes, it provided a basis for an adjustment, *even if not in the amount sought by the IRS*." Id. (emphasis added). The district court accordingly remanded the case "with directions to recompute [the debtor's] tax liability consistent with its decision and to determine penalties and interest." Id. The debtor (through the trustee) took interlocutory appeal. Id.

On appeal, a three-judge panel of the Ninth Circuit explained, as an initial matter, that "[a] bankruptcy court adjudicating a tax claim by the IRS must apply the burden-of-proof rubric normally applied under tax law." Id. at 1084. The panel concluded that the bankruptcy court erred by rejecting the IRS's claims for unreported

Case No.:  8:14-cv-993-EAK-JSS

nonbusiness income and overstated business expense deductions even though those

claims had not been found to be arbitrary or excessive.  Id.  The panel continued:

> Under the bankruptcy court's ruling, where the taxpayer has succeeded
> in proving one item of the IRS's claim to be arbitrary and excessive, the
> burden of proof is shifted as to all items of the [proof of claim].  Indeed,
> the court went further:  Having found one item of the [proof of claim] to
> be arbitrary and excessive, it rejected the entire [proof of claim] without
> regard to the stipulated facts supporting the remaining items.  *The court
> erred* because *where an assessment is based on more than one item, the
> presumption of correctness attaches to each item.  Proof that an item is in error
> destroys the presumption for that single item; the remaining items retain their
> presumption of correctness.*  . . . Only where the error demonstrates a pattern
> of arbitrariness or carelessness will it destroy the presumption for the
> entire assessment.

Id. at 1084–1085 (emphasis added) (internal quotations, citations, and alterations

omitted).  The panel therefore found it error for the bankruptcy court to reject the

unreported nonbusiness income and overstated business deductions items, since the

parties had stipulated that for the 1991 and 1992 tax years the debtor had unreported

nonbusiness income of $160,635 and took business deductions exceeding the

substantiated amounts by $131,593.  Id. at 1085.  Because of the errors committed by

the bankruptcy court, the panel remanded the case to the bankruptcy court so that the

*bankruptcy court* could determine the extent of the debtor's liability for taxes, penalties,

and interest for tax years 1991 and 1992, using the stipulation to compute the amounts

of unreported business income, over-stated business deductions, and unreported

nonbusiness income.  Id. at 1085–1086.

When read together, Helvering, Stonehill, McDonald, Wheeler, and In re

Olshan clearly demonstrate that the procedures the Court utilized to determine

Case No.:  8:14-cv-993-EAK-JSS

Wilkins' total tax liability and enter final judgment against him were in complete accord with the burden shifting framework applicable in civil tax evasion cases.  As an initial matter, since the jury found that *only some of the items* on which the IRS's assessments are based were erroneously included, the presumption of correctness continued to attach to the remainder of the items underlying the assessments.  Stonehill, 702 F.2d at 1294.  Thus, it would have been error for the Court to reject the entirety of the IRS's assessments and place the burden of proof *back* on the United States.  In re Olshan, 356 F.3d at 1085.  Instead, because Wilkins rebutted the assessments' presumption of correctness *only in part*, his resulting tax liability became an issue of law for the Court, requiring the application of relevant provisions of the Internal Revenue Code and simple mathematical computations.  Helvering, 293 U.S. at 515; McDonald, 114 F.3d 1194, at *3; Stonehill, 702 F.2d at 1294; Wheeler, 2008 WL 11334496, at *4–6; In re Olshan, 356 F.3d at 1085.  Further, the Court's solicitation of the United States' assistance in making those computations and rendering final judgment was entirely proper.  See, e.g., McDonald, No. 13218-93; Maynard, No. 13220-93; Wheeler, No. 2:07-cv-6384-VBF-PLA, at (Doc. 52).

### C. The Court Properly Reconciled the Jury's Answers in its Special Verdict for Tax Year 2005.

Defendants next argue that the Court's reconciliation of the jury's answers with respect to tax year 2005 violated Wilkins' Seventh Amendment right to a jury trial because the Court improperly substituted its own judgment in place of the jury's "legitimate" and "essential" fact determinations.  (Doc. 217 at 15–18).  Relatedly,

Defendants argue that "the effect" of the Court's reconciliation "was an increase in the jury's verdict," which, according to Wilkins, violates "the long-standing rule" that "[a] verdict that sets forth what the Court believes is inadequate cannot be increased except by a jury through a new trial." Id.  Based on these asserted errors, Defendants contend that that the judgment related to tax year 2005 should be amended in Wilkins' favor, or, alternatively, a new trial should be granted for tax year 2005.  Id. at 18. Defendants are wrong.  The Court's reconciliation was fair and reasonable in light of the evidence and the remainder of the jury's findings and represented a logical and probable decision on the issues submitted.

When a district court utilizes a special verdict at trial, it can properly take the initiative to reconcile any inconsistencies in the jury's findings.  See Reider v. Philip Morris USA, Inc., 793 F.3d 1254, 1259 (11th Cir. 2015); Flores v. City of Westminster, 873 F.3d 739, 756 (9th Cir. 2017), cert. denied sub nom. Hall v. Flores, 138 S. Ct. 1551 (2018).  "Courts have a duty under the Seventh Amendment to harmonize a jury's special verdict answers, 'if such be possible under a fair reading of them.  A court is also obligated to try to reconcile the jury's findings by exegesis, if necessary.'"  Flores, 873 F.3d at 756 (quoting Floyd v. Laws, 929 F.2d 1390, 1396 (9th Cir. 1991)).  In attempting to reconcile the jury's apparently inconsistent answers, the district court must "view the case in any reasonable way that makes the verdict consistent," id. (alterations omitted), and "should, in determining whether those answers represent a logical and probable decision on the issues as submitted, refer to the entire case – pleadings, evidence, argument, jury instructions – and not just to the jury's answers

themselves," Royal Cup, Inc. v. Jenkins Coffee Serv., Inc., 898 F.2d 1514, 1521 (11th Cir. 1990) (citations omitted).  A district court "must make all reasonable efforts to reconcile an inconsistent jury verdict, and, if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly."  Reider, 793 F.3d at 1259 (citing Mason, 710 F.2d at 1489).

Here, after deliberating for approximately two hours, the jury sent a note to the Court indicating that it had reached a verdict. (Doc. 199-2).  When called upon by the Court to publish its verdict, however, the jury requested an additional five minutes to correct mistakes it had made on the special verdict form.  (Doc. 199-3).  Analysis of the special verdict form, which includes scratched-out amounts sitting side-by-side the final amounts of income that the jury found Wilkins had established were not taxable, reveals that the jury initially misunderstood its directives.  For each tax year except 2003 (where the jury entered only one amount), the jury entered an initial amount, scratched it out, and then replaced it with a final amount.  This is significant because, when added together, the scratched-out amounts and the final amounts equal the total taxable income the IRS attributed to Wilkins for each of the relevant tax years.  Thus, simple math and modest deductive logic reveal the jury's mistake:  the jury initially entered the amount of *taxable income* it found *was* attributable to Wilkins for each of the tax years at issue and then, upon realizing its mistake, scratched out that amount and replaced it with the amount it found Wilkins had established was *not* taxable.  This correction was easily made by simply subtracting the amount of taxable income the jury found was attributable to Wilkins from the taxable income the IRS attributed to

Wilkins for each tax year.  This also explains why the jury did not scratch out the amount it initially entered for tax year 2003.  For that year, the amount of taxable income the jury found was attributable to Wilkins ($110,823) was exactly half the total amount of income the IRS originally attributed to Wilkins in its assessment ($221,646). (Doc. 195 at 10.C).  Therefore, there was no scrivener's error for the jury to correct.

However, although the jury successfully corrected mistakes it had made in calculating Wilkins' non-taxable income for tax years 1996 to 2004, the jury's answer with respect to tax year 2005, as Defendants concede, still "[did] not make sense." (Doc. 217 at 16).  Specifically, for tax year 2005, the jury initially entered "$363,457." (Doc. 195 at 12.C).  As explained above, this would appear to be the amount of *taxable income* the jury found *was* properly attributable to Wilkins.  Upon realizing that this was not what the special verdict asked the jury to determine, the jury crossed out that amount and replaced it with "$793,746."  Id.  Yet, the IRS only attributed to Wilkins $597,132 in income for tax year 2005.  (Doc. 196-13 at 4).  Thus, in other words, the jury found that Wilkins had more *non-taxable* income ($793,746) in tax year 2005 than the amount of taxable income the IRS *actually attributed* to Wilkins for that same year ($597,132).

In its Order on the parties' proposed forms of final judgment, the Court found that the jury's mistake amounted to a simple subtraction error, subject to reconciliation by the Court. (Doc. 204).  Specifically, the Court found that the jury, utilizing United States' Exhibit 18, simply subtracted the amount of taxable income it found *was*

Case No.:  8:14-cv-993-EAK-JSS

properly attributable to Wilkins ($363,457, or the scratched-out amount on the verdict form) from the wrong number.  Id.

A review of United States' Exhibit 18 illuminates the jury's error.  United States' Exhibit 18, admitted at trial during the United States' direct examination of Agent Kerkado, includes a summary table, which shows the amounts of taxable income the IRS attributed to Wilkins for tax years 2003 to 2005.  (Doc. 196-16).  The table includes three columns for each of the three tax years and a fourth "Totals" column, which houses the total amount of taxable income the IRS attributed to Wilkins for all three years.  For clarity and ease of reference, the Court has included the relevant portions of Exhibit 18, below:

| Description/Type | 2003 | 2004 | 2005 | Totals |
|---|---|---|---|---|
| Cash Out + Cash to/for Family Member | $ 121,086.96 | $ 76,178.92 | $ 72,260.75 | $ 269,526.63 |
| Real Estate Property | | 121,068.44 | 309,221.14 | 430,289.58 |
| Department & Specialty Stores/Services | 22,963.69 | 23,218.08 | 46,878.58 | 93,060.35 |
| Loan Payments | 16,173.15 | | | 16,173.15 |
| Taxes and Fees | 13,845.91 | 3,526.69 | 10,161.94 | 27,534.54 |
| Utilities/Phone Service/Internet/Rent | 11,936.45 | 9,193.15 | 10,715.90 | 31,845.50 |
| Medical Services and Pharmacy | 9,742.89 | 5,926.09 | 4,610.97 | 20,279.95 |
| Food and Liquor Store | 6,105.13 | 11,371.05 | 13,838.21 | 31,314.39 |
| Vehicle Expense | 5,518.51 | 27,543.43 | 68,461.98 | 101,523.92 |
| Animal Related | 3,462.95 | 38,872.07 | 15,185.94 | 57,520.96 |
| Miscellaneous and/or Unidentified | 3,237.63 | 4,882.48 | 6,286.23 | 14,406.34 |
| Legal Fees | 3,000.00 | 12,556.40 | 21,184.51 | 36,740.91 |
| Restaurants/Gas/Entertainment | 2,688.26 | 4,087.73 | 11,826.18 | 18,699.95 |
| Donation | 1,885.00 | | 6,500.00 | 8,385.00 |
| Totals | $ 221,646.53 | $ 338,424.53 | $ 597,132.33 | $ 1,157,203 |

Id.  In attempting to correct its answer for tax year 2005, what appears to have happened is that instead of subtracting the amount of taxable income the jury found

was properly attributable to Wilkins for tax year 2005 ($363,457) from the amount of taxable income the IRS attributed to Wilkins for that same year ($597,123), as the jury had successfully done for the other tax years at issue, the jury mistakenly subtracted $363,457 from the *total* amount of taxable income the IRS attributed to Wilkins for all three years ($1,157,203).  Indeed, $1,157,203 less $363,457 equals $793,746 – or, the amount the jury erroneously entered on the special verdict form.

Given the benefit of hindsight, the Court found the jury's minor misstep to be a reasonable one.  (Doc. 204 at 10).  This is because the total amount of taxable income the IRS attributed to Wilkins for tax years 2003 to 2005 (*i.e.*, the number the jury mistakenly utilized in its calculation) sits in the column directly to the right of the column housing the amount of taxable income the IRS attributed to Wilkins solely for tax year 2005 (*i.e.*, the amount the jury *should have* utilized).   Thus, it's not unreasonable to think the jury simply misidentified the appropriate figure while making quick, last-minute adjustments to its verdict due to the proximity of the figures' locations within the table.  Given a fair reading of the remainder of the jury's verdict and applying the same mechanics the jury utilized to correct mistakes it made for the other tax years, the Court found that the jury should have entered $233,675 as the amount of Wilkins' non-taxable income for tax year 2005.  (Doc. 204 at 9).  That is, $597,132 (the total taxable income the IRS attributed to Wilkins for that year) less $363,457 (the amount of taxable income the jury found was properly attributable to Wilkins) equals the amount of taxable income the jury found was *not* taxable, or $233,675.

The Court's actions here were proper and are akin to those taken by Judge Propst of the Northern District of Alabama and affirmed by the Eleventh Circuit in Royal Cup, Inc.  In Royal Cup, Inc., the plaintiff sued the defendant for, *inter alia*, breach of a contract for the sale of two "coffee service routes".  898 F.2d at 1516.  Under the contract, the plaintiff was to pay the defendant a total purchase price of $297,251.  Id.  The purchase price was to be paid in the following steps:  (1) $50,000 already delivered as a down payment; (2) $146,251 upon closing; and (3) $101,000 twelve weeks after closing.  Id.  Additionally, the contract included purchase price set-off provisions, which permitted reductions in the final $101,000 payment if the defendant failed to deliver certain assets.  Id.  The plaintiff filed its lawsuit on the same day the final $101,000 payment was due.  Id. at 1517.

At trial, pursuant to Rule 49(a), Judge Propst directed the jury to return its decision on a special verdict form containing several interrogatories.  Id. at 1518.  Upon deliberation, the jury found that the defendant had breached the contract, that the plaintiff did not, and that the plaintiff's damages from the breach were $96,600.  Id.  Instead of entering judgment in the plaintiff's favor for that amount, however, Judge Propst, based on his interpretation of the jury's application of the contract's set-off provision for asset shortfalls, awarded $4,400 *to the defendant*, which reflected the balance of the purchase price owed to the defendant under the contract (*i.e.*, $101,000 less $96,600).  Id.

On appeal, the Eleventh Circuit held "that the jury's answers, so interpreted, represent[ed] a logical and probable decision on the issues submitted and that the

district court's judgment was based on a fair and reasonable reconciliation of those answers." Id. at 1523. The panel reasoned that to hold otherwise and excuse the plaintiff from the remaining purchase price while also allowing it to retain the routes and awarding it additional damages for the undelivered assets, would result in an "unfair windfall" to the plaintiff. Id.

Here, as Defendants admit, the jury's "answer to [q]uestion 12.C does not make sense in light of [its] answer to [q]uestion 12.B, and it appears that the jury made a mistake[.]" (Doc. 217). Although Defendants contend that the jury's mistake "does not give the Court or the parties the right to substitute their own judgment for the verdict, no matter how logical it may seem," id., the law says otherwise, see, e.g., Royal Cup, Inc., 898 F.2d at 1523. Upon realizing the jury's mistake, the Court made a "fair and reasonable" reading of the jury's answers to question 12.C, which otherwise wouldn't have made sense and would've been inconsistent with the remainder of the special verdict. Id. By doing so, the Court actually gave effect to Wilkins' right to a jury trial – though he clearly doesn't approve of the result – since the jury's answers, as interpreted by the Court, "represent[] a logical and probable decision on the issues submitted." Id.

Moreover, it's abundantly clear that the jury found that Wilkins, in fact, realized taxable income in tax year 2005. Such a conclusion is supported by the remainder of the jury's verdict. For one, it would have been inconsistent for the jury to have found that Wilkins' failure to file an income tax return for tax year 2005 was fraudulent, as it did in answering question 14, if it also found that Wilkins did *not* realize taxable

34

income in that year. And second, as explained above, analysis of the mechanics the jury utilized to correct mistakes it made in calculating Wilkins' non-taxable income for the other tax years at issue reveals that the jury initially entered the amounts of taxable income it found *were attributable* to Wilkins. And for tax year 2005, the jury initially wrote "$363,457." (Doc. 195 at 12.C). Thus, to adopt Defendants' position and hold that Wilkins owes nothing for tax year 2005 would be to afford Wilkins an "unfair windfall" by excusing him from paying a tax that a jury of his peers found he duly owes. Id.

As a final point, that the Court's actions had the effect of increasing the total of the "damages" as found by jury is of no consequence. To be sure, this wasn't a situation where the Court increased a damages award simply because it found that the jury's verdict, although in all other respects correct, was simply "inadequate" with respect to damages. See, e.g., Dimick v. Schiedt, 293 U.S. 474, 486 (1935). Indeed, such an increase by the Court for that reason would be improper, and to do so would require a new trial, as Defendants correctly point out. Id. Rather, here, the Court simply undertook an effort to understand and reconcile an obvious error within the verdict, which the Court is permitted, and in fact *required*, to do. Flores, 873 F.3d at 756. In that respect, the Court was not *substituting* its own judgment for the judgment of the jury but was instead endeavoring to accurately determine what the *jury intended* to find in its verdict in the first place.

**D. Agent Kerkado's Computations of Wilkins' Estimated Tax Penalties Are Correct.**

Finally, Defendants argue that Agent Kerkado's calculations of Wilkins' estimated tax penalties are "erroneous in numerous respects." (Doc. 217 at 18–20). Defendants contend that these errors should result in the Court's final judgment being "vacated and re-entered in Wilkins' favor[.]" Id. at 20. However, in their briefing of the issue, Defendants point to only one specific error, which, upon closer review, isn't an error at all. Agent Kerkado's calculations are correct.

The Internal Revenue Code requires taxpayers to make estimated tax payments during the year for which the tax is due. 26 U.S.C. § 6654. The Internal Revenue Code defines this "required annual payment" as:

the lesser of –

(i)  90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or

(ii)  100 percent of the tax shown on the return of the individual for the preceding taxable year.

26 U.S.C. § 6654(d)(1)(B). Clause (ii) does not apply "if the individual did not file a return for such preceding taxable year." Id. If a taxpayer fails to make the required annual payment, he or she is subject to a penalty based on the estimated tax that was due to be paid. 26 U.S.C. § 6654(a). The penalty rate is the Federal short-term rate as of a particular date, plus three points. 26 U.S.C. §6621(a)(2), (b).

According to Defendants, Agent Kerkado erred in calculating Wilkins' estimated tax penalty for tax year 2003. Specifically, Defendants explain:

> The estimated tax due for 2003 is the lower of:  (1) 100% of 2002's tax due ($2,426); and (2) 90% of the 2003 tax due ($23,154.30, which is calculated by multiplying $25,727 by 90%).  The lower of these two numbers is $2,426.  The penalty [Agent] Kerkado asserts for 2003, however, is $1,363.53, which is about 56% of the required estimated tax payment for 2003.

(Doc. 217 at 19) (footnote omitted).  Since "the Federal short-term rate has never come close to approaching 5[6]%," Defendants conclude that Agent Kerkado's calculations are facially incorrect.  Id.

However, Defendants fail to read the entire statute, and they misrepresent the law with respect to the required annual payment.  As the United States correctly points out, Section 6654 plainly states that when a taxpayer does not file a return, no consideration is given to the preceding year's tax (i.e., tax year 2002).  26 U.S.C. § 6654(d)(1)(B).  In other words, since Wilkins did not file a tax return for tax years 2002 or 2003, the proper amount on which to compute Wilkins' estimated tax penalty for 2003 is 90% of the tax Wilkins owed for tax year 2003 (i.e., 90% of $25,727, or $23,154.30), (Doc. 205-1 at 3), and not the lower amount he owed for tax year 2002.  Using that amount, the estimated tax penalty equates to $1,363.53, or about 5.89% of Wilkins' required estimated tax payment for tax year 2003 – not the 56% of which Defendants complain.  As Defendants point to no other alleged errors in Agent Kerkado's calculations, the Court sees no bases to alter the final judgment.

Case No.:  8:14-cv-993-EAK-JSS

IV.    **Conclusion**

Accordingly, it is

**ORDERED** that Defendants' Motion to Alter or Amend the Judgment on

Count I, or Alternatively for a New Trial (Doc. 217) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 26th day of

February, 2019.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record